IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

BRANDON FLACK,

      Plaintiff,

v.                      CIVIL ACTION NO. 1:17-04381

DONNIE AMES, Superintendent,
Mount Olive Correctional Complex,

      Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  By Standing Order, the action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of findings of fact and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Tinsley submitted his Findings and Recommendation ("PF&R") to the court on August 15, 2019, in which he recommended that this court deny plaintiff's motion for summary judgment, deny plaintiff's motion for stay and abeyance, grant defendant's motion for summary judgment, deny plaintiff's petition under 28 U.S.C. § 2254, and remove the matter from the court's docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days plus three mailing days in which to file any objections to Magistrate Judge Tinsley's

Findings and Recommendations.  After receiving an extension of

the deadline for filing objections, on September 17, 2019,

plaintiff filed timely objections to Magistrate Judge Tinsley's

Findings and Recommendation.  With respect to those objections,

the court has conducted a <u>de novo</u> review.

## I.  Background

The factual background of this case is taken from Flack's

direct appeal.  <u>See</u> <u>State v. Flack</u>, 753 S.E.2d 761 (W. Va. 2013).

> In late January 2011, the defendant
> [Flack] and three other men devised a plan to
> burglarize the home of the defendant's uncle.  On
> the evening of the planned burglary the four men
> gathered ski masks and two handguns, and then
> drove from their homes in Pulaski, Virginia, to
> Bluefield, West Virginia, where the uncle's house
> was located.  Arriving shortly after midnight on
> January 29, 2011, the defendant and two of his
> accomplices donned the ski masks, obscuring their
> faces, and approached the back of the house.  The
> fourth man remained in the car.  Observing that
> lights were on in the house, one of the men
> knocked on the back door.
>
> Inside the house were three
> seventeen-year-old boys, including Matthew Flack,
> a second cousin of the defendant's.  Hearing the
> knock on the back door, Matthew peered through a
> curtain.  Seeing the three masked men standing at
> the back door, Matthew ran to the second floor of
> the house where he retrieved a handgun.
>
> As Matthew ran up the stairs, the
> defendant kicked in the back door.  The three men
> then entered the house.  The defendant went up
> the stairs and began struggling with Matthew.  As
> Matthew and the defendant struggled, Jasman
> Montgomery, who was one of the defendant's
> accomplices, ran up the stairs, pulled out a
> pistol and shot Matthew in the face.

Although mortally wounded, Matthew shot and wounded the defendant.  As Matthew lay on the floor dying, the defendant and his two accomplices ran out of the house and fled from the scene.

The three men took the defendant, who was bleeding heavily, to the Bluefield Regional Medical Center.  In an effort to explain the shooting, the men concocted a story that the defendant had been shot in a drive-by-shooting. As the defendant received treatment, the men returned to the car where they waited in the parking lot.  Police officers arrived at the hospital to investigate and went to the parking lot to talk with the three men.  Noticing blood on the inside and outside of the car, the officers asked for and were given permission to search the vehicle. The officers found two handguns and ski masks in the car.

The defendant was indicted for first degree murder, burglary, first degree robbery and conspiracy to commit first degree murder. The defendant pled not guilty and his case proceeded to trial. . . .

At trial, the State's witnesses included Jasman Montgomery (the accomplice who shot and killed Matthew Flack) and Dr. James Kaplan, the State Medical Examiner.

[Jasman] Montgomery pled guilty to first degree murder and received a life sentence with the possibility of parole after serving fifteen years.  As part of his plea agreement, Montgomery testified for the State and testified about his guilty plea before the jury.  Further, he discussed the planning of the robbery, the forced entry into the Flack residence, his shooting of Matthew Flack, and testified about driving the defendant to the hospital.  At no time during the trial did defense counsel request that the jury be given a limiting or cautionary instruction regarding the consideration which the jurors could—or could not—give to Montgomery's testimony that he had pled guilty to murdering Mr. Flack.

>Dr. James Kaplan, who did not conduct the
>autopsy of Matthew Flack, testified that Mr.
>Flack died as a result of a gunshot wound.  The
>autopsy report was not introduced into evidence,
>and the pathologist who prepared the report did
>not testify.  Defense counsel did not object to
>Dr. Kaplan's testimony.

Id. at 763-64.

On April 26, 2012, following a three-day jury trial in the Circuit Court of Mercer County, West Virginia, Flack was convicted of first degree murder, burglary, robbery, and conspiracy.  See Flack v. Ballard, 803 S.E.2d 536, 542 (W. Va. 2017).  On June 7, 2012, the trial court denied Flack's motion for a new trial.  See id.  However, because the State had pursued the murder charge based on a felony murder theory, the trial court merged the counts of first degree murder and burglary, resulting in dismissal of the burglary conviction.  See id. Flack was sentenced to life with mercy for the first degree murder offense, forty years for the first degree robbery offense, and an indeterminate term of one to five years for the conspiracy offense, with all sentences to run consecutively.  Eventually, the sentence was amended such that the forty-year sentence on the robbery convction was ordered to run concurrently with the first degree murder conviction.  PF&R at p. 16; ECF No. 13-27 (Ex. 10).

## II.  Standard of Review

Under 28 U.S.C. § 2254, Flack is entitled to federal habeas relief only if he "is in custody in violation of the

4

Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a). Section 2254(d) provides that when the issues

raised in a § 2254 petition were raised and considered on the

merits in State court habeas proceedings, federal habeas relief

is unavailable unless the State court's decision:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

"This `is a difficult to meet and highly deferential standard for

evaluating state-court rulings, which demands that state-court

decisions be given the benefit of the doubt.'" Hope v.

Cartledge, 857 F.3d 518, 523 (4th Cir. 2017) (quoting Cullen v.

Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks

and citations omitted)).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme

Court stated that under the "contrary to" clause in § 2254(d)(1),

a federal habeas Court may grant habeas relief "if the State

court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the State court decides a case

differently than this Court has on a set of materially

indistinguishable facts." Williams, 529 U.S. 362, 412-13 (2000).

A federal habeas Court may grant relief under the "unreasonable

application" clause of § 2254(d)(1) where the State court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id. In determining whether the State court's decision was contrary to, or was an unreasonable application of, Supreme Court precedent, all factual determinations by the State court are entitled to a presumption of correctness. See 28 U.S.C. § 2254(e).

A state court's decision is "contrary to" clearly established federal law when it "applies a rule that contradicts the governing law set forth" by the United States Supreme Court, or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams, 529 U.S. at 405-06. A state court's decision involves an "unreasonable application" of clearly established federal law under § 2254(d)(1) "if the state court identifies the correct governing legal rule from . . . [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "The state court's application of clearly established federal law must be 'objectively unreasonable,' and 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

6

incorrectly.'"  <u>Robinson v. Polk</u>, 438 F.3d 350, 355 (4th Cir.
2006) (quoting <u>Williams</u>, 529 U.S. at 411).  Moreover, when
"assessing the reasonableness of the state court's application of
federal law, the federal courts are to review the result that the
state court reached, not whether [its decision] [was] well
reasoned."  <u>Wilson v. Ozmint</u>, 352 F.3d 847, 855 (4th Cir. 2003)
(quotation marks omitted).

### III.  Objections

A.  <u>Confrontation Clause</u>

  Flack's first objection concerns the PF&R's findings and
conclusions regarding the testimony of Dr. James Kaplan.  Dr.
Kaplan testified at trial that Matthew Flack died as the result
of a gunshot wound but did not prepare the autopsy report so
stating.  According to Flack, this violated his Sixth Amendment
right to confront the witness against him who actually performed
the autopsy.

  The Sixth Amendment to the United States Constitution
provides that "[i]n all criminal prosecutions, the accused shall
enjoy the right . . . to be confronted with the witnesses against
him. . . ."  U.S. Const. amend. VI.  In <u>Crawford v. Washington</u>,
the Court held that the Sixth Amendment Confrontation Clause bars
"admission of testimonial statements of a witness who did not
appear at trial unless he was unavailable to testify, and the

defendant had a prior opportunity for cross-examination."  541

U.S. 36, 53–54 (2004).

Flack raised the confrontation clause issue during his

direct appeal.  In rejecting this claim, the Supreme Court of

Appeals of West Virginia stated:

> After review of the entire record we
> conclude that the error raised by the defendant
> was harmless beyond a reasonable doubt.  Unlike
> the facts we addressed in Frazier, where the
> manner of death was very much in contention, Dr.
> Kaplan's testimony at the defendant's trial had
> little probative value and mirrored testimony
> from other witnesses.  Montgomery testified and
> *admitted to shooting Matthew Flack*.  The
> defendant did not contest Montgomery's testimony
> that he was the shooter.  Dr. Kaplan merely
> confirmed that Matthew Flack died as a result of
> a gunshot wound, and that the death was a
> homicide.  Of critical import is that nothing in
> Dr. Kaplan's testimony implicated the defendant
> in the homicide, linked him to the crimes
> charged, or made it more likely or less likely
> that the defendant committed the murder of
> Matthew Flack.

State v. Flack, 753 S.E.2d 761, 769 (W. Va. 2013) (emphasis in

original).

During his state habeas proceeding, Flack also claimed

that his trial counsel was ineffective for "fail[ing] to object

to the autopsy evidence being elicited from a different

pathologist than the one who performed the autopsy".  Flack v.

Ballard, 803 S.E.2d 536, 543 (W. Va. 2017).  Of any error

surrounding this decision, the Supreme Court of Appeals wrote:

Addressing the elements of felony murder, we have held:

> "[T]he elements which the State is required to prove to obtain a conviction of felony murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt." State v. Williams, 172 W. Va. 295, [310,] 305 S.E.2d 251, 267 (1983).

Syl. Pt. 5, State v. Mayle, 178 W. Va. 26, 357 S.E.2d 219 (1987) (emphasis added). We recently limited the scope of the felony murder doctrine as it applies to certain circumstances involving the death of a co-perpetrator in Davis, 229 W. Va. 662, 735 S.E.2d 259. However, Davis has not altered the rule articulated in Mayle, which is applicable to the facts in this case.

Accordingly, we conclude that defense counsel's strategy in this case did not require expert testimony to challenge the State's firearms expert or medical examiner, as the identity of the shooter and the specific details of Matthew Flack's death were irrelevant to the felony murder theory of the case presented. So long as Petitioner's criminal act of going to the Flack Residence with the intent to commit burglary and robbery resulted in Matthew Flack's death, the jury could still properly convict Petitioner of felony murder under Mayle. Under these circumstances, an alternate shooter theory was inapposite.

Similarly, Mr. Lefler testified that he did not hire a medical examiner because the manner of Matthew Flack's death did not matter. Mr. Lefler reasoned that "had Matthew Flack had a

heart attack when he saw a gun and passed . . .
it would have still been felony murder." The
same principle applies to the testimony of Dr.
Kaplan, to which defense counsel did not object.
Dr. Kaplan only confirmed that Matthew Flack died
of a gunshot wound, a fact not contested by
anyone.

Id. at 548 (footnote omitted).

Of Flack's confrontation clause claim, the PF&R

concluded:

> In light of the fact that the State did
> not need to specifically prove who killed Matthew
> Flack or exactly how he died, so long as he was
> killed during the commission of an enumerated
> felony, Dr. Kaplan's testimony was only material
> to the determination that Matthew's death was a
> homicide, which was basically undisputed. Thus,
> the undersigned proposes that the presiding
> District Judge **FIND** that the alleged
> Confrontation Clause violation did not have a
> substantial and injurious effect on the outcome
> of the proceeding and, thus, was harmless error.
> Accordingly, the undersigned further proposes
> that the presiding District Judge **FIND** that the
> state courts' decisions denying Petitioner habeas
> corpus relief on this claim were not contrary to,
> or an unreasonable application of, clearly
> established federal law and Respondent is
> entitled to judgment as a matter of law on the
> Confrontation Clause claim contained in Ground
> One of Petitioner's section 2254 petition.

PF&R at p. 53.

Flack objects to the PF&R's characterization of the

confrontation clause error as "alleged". According to Flack,

even the defendant conceded that allowing Dr. Kaplan to testify

regarding the autopsy report was an error in violation of the

Confrontation Clause of the Sixth Amendment. While Flack is

10

correct that the Confrontation Clause error was recognized by the defendant and the state courts, the use of the word "alleged" in the PF&R does not undermine this finding. The PF&R's confrontation clause analysis focuses almost entirely on whether any such error was harmless. And, like the state courts who had already considered the issue, concluded that it was. See PF&R at pp. 50-53.

A violation of the Confrontation Clause "does not automatically entitle a petitioner to a grant of a writ of habeas corpus." Wiggins v. Boyette, 635 F.3d 116, 121 (4th Cir. 2011). Such an error is, instead, subject to review for harmlessness. See id.; see also Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (remanding for a harmless-error analysis because "[w]e believe that the determination whether the Confrontation Clause error in this case was harmless . . . is best left to the Delaware Supreme Court in the first instance"). In the context of federal habeas corpus, a constitutional error will warrant relief only if the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). This standard applies whether or not the state appellate court recognized the error. Fry v. Pliler, 551 U.S. 112, 117 (2007) ("The opinion in Brecht

clearly assumed that the <u>Kotteakos</u> standard would apply in virtually all § 2254 cases.").

When considering whether a Confrontation Clause violation was harmless under <u>Brecht</u>, a court is to consider the factors laid out in <u>Van Arsdall</u>. <u>See</u> <u>Wiggins</u>, 635 F.3d 122-23. Those factors include: "the importance of the [improperly admitted] witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." <u>Id.</u> at 122.

Flack quarrels with the PF&R's conclusion that Dr. Kaplan's testimony was only material to the determination that Matthew Flack's death was a homicide because, according to him, Dr. Kaplan testified about a host of other things. However, Flack's objection focuses on the length of Dr. Kaplan's testimony and not its substance. A close review of Dr. Kaplan's entire testimony confirms that his testimony was only relevant to whether Matthew Flack died of a gunshot wound. A fact that was uncontested at trial and corroborated by other evidence. Under these circumstances and the deferential standard applicable to habeas review, the court concludes that the error did not "substantially influence" the jury's decision. Accordingly, the

court cannot say that the State court's adjudication of the
Confrontation Clause issue is contrary to, or involved an
unreasonable application of clearly established federal law as
determined by the Supreme Court of the United States.  See, e.g.,
United States v. Saad, 888 F.3d 561, 568 (1st Cir. 2018) (holding
that even if defendant's Confrontation Clause rights were
violated by agent's testimony referring to expert's report, any
such error was harmless); United States v. Brooks, 772 F.3d 1161,
1172 (9th Cir. 2014) (although postal inspector's testimony about
nontestifying post office supervisors statements violated
defendant's Confrontation Clause rights, error was harmless on
two counts of conviction where overwhelming evidence supported
convictions); United States v. Mouzone, 687 F.3d 207, 214-15 (4th
Cir. 2012) (finding harmless any Confrontation Clause error
arising from admission of drug analysis report that contained
findings of analyst who did not testify at trial and was not
cross-examined by defendant);  United States v. Roberts, No. 09-
4609, 419 F. App'x 155, 161-62 (3d Cir. Mar. 22, 2011) (admission
of trace summary of firearm to prove interstate commerce element
of charge of felon in possession was harmless error where there
was no doubt about interstate commerce element); Sykes v.
Wolfenbarger, No. 09-2356, 448 F. App'x 563, 569 (6th Cir. Nov.
21, 2011) (concluding that any violation of the Confrontation
Clause in the admission of police officer's testimony which

relied, in part, on reports written by other officers, was
harmless error because the evidence in the reports was an
insignificant part of the case against defendant); Hahn v. Woods,
No. 2:16-cv-164, 2019 WL 2559676, *2 (W.D. Mich. June 21, 2019)
(admission of lab results generated by a non-testifying witness
was harmless error where the admission of results was "consistent
with both the prosecution and defendant's theories of the case");
Hamilton v. Stephens, 183 F. Supp.3d 809, 814 (W.D. Tex. 2016)
(holding Confrontation Clause error resulting from witness's
testimony about DNA report produced by someone else was harmless
"DNA report was cumulative, no other evidence contradicted the
evidence of [ ] analysis, and a great amount of other evidence
independently supported Petitioner's conviction"); Woods v.
Woods, Case No. 2:17-CV-26, 2019 WL 2240290, *1 (W.D. Mich. May
24, 2019) (finding harmless any error resulting from crime scene
specialist's presentation of DNA evidence instead of the analyst
who examined the DNA); Leonard v. Goodwin, Civil Action No. 09-
901-RET-DLD, 2011 WL 4435176, *11 (M.D. La. Aug. 25, 2011)
(holding any error in trial court's decision to allow expert to
testify from an autopsy report performed by another person where
effect of the expert's testimony was harmless because defendant
did not dispute he shot and killed victim);  Accordingly, Flack's
objection to Dr. Kaplan's testimony on Confrontation Clause
grounds is **OVERRULED.**

B.  Ineffective Assistance of Counsel

        Flack raised a number of claims of ineffective assistance
of counsel related to certain actions or inaction on the part of
his trial attorneys.  The state courts rejected these claims and
Magistrate Judge Tinsley concluded that Flack was not entitled to
habeas relief on those grounds.  Flack objects to the PF&R
regarding certain of those claims.

        The standards established by the United States Supreme
Court in determining whether a defendant was denied his Sixth
Amendment right to effective assistance of counsel are set forth
in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Under
Strickland, a plaintiff must show (1) that counsel's performance
was so deficient that it fell below an objective standard of
reasonableness, and (2) that counsel's deficiency resulted in
prejudice so as to render the results of the trial unreliable.
Id. at 687-91.  Counsel's performance is entitled to a
presumption of reasonableness.  Id.  Thus, a habeas plaintiff
challenging his conviction on the grounds of ineffective
assistance must overcome a strong presumption that the challenged
actions constituted sound trial strategies.  Id. at 689.  The
Court in Strickland cautioned against the ease in second-guessing
counsel's unsuccessful assistance after the adverse conviction
and sentence are entered.  Id.  The Fourth Circuit Court of
Appeals specifically recognized that ineffective assistance of

counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

Under the second prong of Strickland, a petitioner must show that the errors were "sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Furthermore, a court may address the two prongs in any order and a failure to establish one prong obviates a need to address the other. Id. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so

burdensome to defense counsel that the entire criminal justice system suffers as a result.").

      1. *Failure to Interview or Subpoena Fact Witnesses*

Flack objects to the magistrate judge's conclusion that trial counsel was not ineffective for failing to interview Heather Davis and Ashley Burelson and call them as witnesses at trial. Of this claim, the West Virginia Supreme Court of Appeals wrote:

> Petitioner contends that defense counsel should have called Heather Davis and Ashley Burelson as fact witnesses at trial. Ms. Davis and Ms. Burelson were with Petitioner and his accomplices during the night of the incident at the Flack Residence. Petitioner argues that their testimony could have been used to undermine the testimony of Amanda Shorter, an eyewitness. Ms. Shorter testified at trial that after 11:00 p.m. on the night of January 29, 2011, she saw four men get out of a car, change into dark clothes and put toboggans on their heads. She testified that the men, who were laughing and being loud, walked up to the back door of the Flack Residence and knocked before the door opened and they entered the house. She further testified that subsequent to the men entering the Flack Residence, she heard gunshots and observed two women, Ms. Davis and Ms. Burelson, run up to the same car and get into the backseat before Petitioner and his co-defendants fled the scene. Petitioner contends that contrary to Ms. Shorter's testimony, the police determined that Ms. Davis and Ms. Burelson stayed behind at an apartment and were nowhere near the crime scene. Petitioner argues that the testimony of the two women could have been used to discredit the testimony of Ms. Shorter, and they would have testified that there was no discussion of any plan to commit a crime.

Petitioner claims that the private investigator he retained for his habeas corpus case located Ms. Davis, who cooperated with him and gave a recorded interview. He contends that had she been subpoenaed by defense counsel, she would have testified that there was no discussion of a plan to commit a robbery, burglary, larceny or any other crime. He also claims that she would have testified that their car had a full tank of gasoline and they had money to purchase beer, food or anything else that they and Petitioner may have wanted or needed that night. He asserts that this evidence could have discredited several state witnesses and supported Petitioner's version of the events leading up to his entry into the Flack Residence. Petitioner contends that prior to going to the Flack Residence, he left Ms. Davis and Ms. Burelson at a relative's home in order to buy beer at a convenience store and they were waiting on him to return because they were planning to ride home with him in Ms. Davis's grandfather's car.

The State responds that defense counsel's decision not to subpoena these witnesses was a matter of trial strategy and, absent extraordinary circumstances, is outside the purview of an ineffective assistance of counsel claim. The State contends that the theory of the defense presented at trial was that Petitioner and his accomplices did not arrive at the Flack Residence intending to commit any crime and that the conduct of the group as they exited their car and approached the Flack Residence demonstrated their lack of criminal intent. Mr. Lefler stated in his closing argument that there "was no plan [to commit a robbery]" and made reference to Ms. Shorter's testimony recounting her observations of the behavior of Petitioner and the others as they approached the Flack Residence.

At the omnibus hearing, defense counsel Mr. Lefler testified that "we were certainly aware the State intended to proceed on a felony murder theory, and the particulars [of how and by whom Matthew Flack was killed], in all honesty, weren't our focus." Mr. Lefler described Ms. Shorter as "the best witness we had." He

18

reasoned that her testimony was "potentially very beneficial," and that "the last thing they wanted to do" was discredit her. Mr. Lefler testified that Ms. Shorter confirmed that Petitioner and his accomplices made a lot of noise and did not appear to be concerned with being quiet or approaching the house in a fashion that was undetectable. Additionally, because Ms. Shorter testified that she did not see a door kicked in, the defense sought to use her testimony to establish that Petitioner and his accomplices approached the house in a manner that did not appear to be for evil intent. Moreover, Mr. Lefler stated that had Ms. Shorter not been called by the State during its case-in-chief, he would have called her as a defense witness. When Petitioner inquired why Ms. Davis and Ms. Burelson were not subpoenaed to testify, Mr. Lefler explained that although he initially looked for these witnesses when he began investigating the case, he could not locate them.

In Daniel v. Legursky, 195 W. Va. 314, 328, 465 S.E.2d 416, 430 (1995), we stated that "[a] decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" (quoting Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995)). We have also noted, "[w]hat defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Miller, 194 W. Va. at 16, 459 S.E.2d at 127.

As we explained in Miller, "with [the] luxury of time and the opportunity to focus resources on specific facts of a made record, [habeas counsel] inevitably will identify shortcomings in the performance of prior counsel." Id. at 17, 459 S.E.2d at 128. "[P]erfection is not the standard for ineffective assistance of counsel." Id. Only if an identified error is "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" is the first

prong of the Strickland test satisfied.
Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

As the habeas court correctly determined, defense counsel's decision not to call the two witnesses was a matter of trial strategy. According to the record, defense counsel was aware that these two female witnesses were not present during the shooting. It is clear that defense counsel considered these issues but focused on attacking the burglary charge when the State offered it as the predicate offense for felony-murder and the robbery charge. Mr. Lefler explained that because he believed that Ms. Shorter was Petitioner's best witness and that her testimony would be very beneficial to Petitioner, he did not want to discredit her at trial.

This Court has previously rejected habeas claims predicated upon a failure to interview or call a particular witness. See e.g., State ex rel. Azeez v. Mangum, 195 W. Va. 163, 465 S.E.2d 163 (1995); State v. Spence, 182 W. Va. 472, 388 S.E.2d 498 (1989); State v. Jacobs, 171 W. Va. 300, 298 S.E.2d 836 (1982); Foster v. Ballard, No. 14-1023, 2015 WL 6756866 (W. Va. Nov. 4, 2015) (memorandum decision); Boothe v. Ballard, No. 13-0740, 2014 WL 2782127 (W. Va. June 19, 2014) (memorandum decision). We have also held that so long as the failure to call a witness is not "due to dereliction on the part of counsel, there is no ineffective assistance." Legursky, 195 W. Va. at 329, 465 S.E.2d at 431. For these reasons, we conclude that the decision not to call Ms. Davis or Ms. Burelson for the purpose of discrediting Ms. Shorter's testimony was objectively reasonable and we affirm the habeas court's finding on this issue.

Flack v. Ballard, 803 S.E.2d 536, 546-47 (W. Va. 2017).

Based upon the foregoing, the court cannot conclude that the state courts' application of Strickland was unreasonable and the objection thereto is **OVERRULED.**

20

2. *Failure to request* <u>*Caudill*</u> *instruction*

Flack also contends that the trial court's failure to give a limiting instruction pursuant to <u>State v. Caudill</u>, 289 S.E.2d 748 (1982), even though he did not ask for such an instruction until <u>after</u> the trial, entitles him to habeas relief. The state courts rejected this claim both on direct appeal and in the state court habeas proceeding. The PF&R recommended that this court find the state courts' decisions were neither contrary to, nor an unreasonable application of, clearly established law. Flack objects to this recommendation.

During Flack's direct appeal, the West Virginia Supreme Court of Appeals denied Flack's motion for a new trial on this claim. The court wrote:

> The defendant did not request a limiting instruction at the time of Montgomery's testimony, or during the trial court's jury instruction conference. It was not until after the trial that defense counsel raised the argument that a trial court must, sua sponte, give a limiting instruction when an accomplice has pled guilty and, at the later trial of the defendant, testifies on behalf of the State and relates that guilty plea to the jury. While the defendant did not object or request a limiting instruction, he nonetheless argues that the issue is plain error requiring that we reverse his convictions and remand his case for a new trial. <u>See</u> <u>State v. Miller</u>, 194 W. Va. 3, 459 S.E.2d 114 (1995) ("To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.").

In Syllabus Point 3 of <u>State v. Caudill</u>, 170 W. Va. 74, 289 S.E.2d 748 (1982), we held that

> [i]n a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against a defendant where such testimony is not for the purpose of proving the guilt of the defendant and is relevant to the issue of the witness-accomplice's credibility. <u>The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error</u>.

(Emphasis added). The defendant argues that <u>Caudill</u> requires a trial court to, sua sponte, give a limiting instruction when an accomplice who has pled guilty testifies to that guilty plea at another defendant's trial. The State responds that to impose such a duty upon the trial court may, in actuality, interfere with a defense strategy on dealing with the accomplice's testimony. The State posits that defense counsel, faced with the difficult task of dealing with the damaging testimony of an accomplice, may not want to have a <u>Caudill</u> instruction because such an instruction could emphasize the damaging testimony. In such cases the trial court could be interfering with a defendant's right to develop his own trial strategy. We agree.

<u>Caudill</u> does not directly address the issue presently before this Court: whether it is reversible error in all instances where a trial court fails to give a <u>Caudill</u> limiting instruction or whether it is reversible error only where the trial court has failed to give the limiting instruction when it has been requested by the defendant. We believe the proper answer to be the latter of these two possibilities. Since this is a relatively novel issue for this Court, we have considered decisions of courts in other jurisdictions where a similar issue was resolved.

In United States v. DeLucca, 630 F.2d 294, 299 (5th Cir. 1980) (footnotes omitted), the Court of Appeals observed that

> [o]rdinarily, when the jury learns of a codefendant's guilt for the same or similar offenses, and the defense counsel does not request that a curative instruction be given, the failure of the trial judge to give one will not require reversal. United States v. Beasley, 519 F.2d [233] at 240 [ (5th Cir.1975) ]. Only in those rare situations in which other "aggravating circumstances" have exacerbated the prejudice will the failure to give cautionary instructions result in plain and reversible error. See e.g., United States v. Harrell, 436 F.2d 606, 617 (5th Cir. 1970) (court's conclusion of plain error was specifically predicated upon both aggravating circumstances and the absence of any cautionary instructions, as well as the lack of defense objections).

See also United States v. Ojukwa, 712 F.2d 1192, 1193-94 (7th Cir. 1983) (rejecting a defendant's argument that reversible error occurred because the trial court failed to give a limiting instruction, observing that "when 'defense counsel does not request that a curative instruction be given, the failure of the trial judge to give one will not require reversal.'"); State v. Ross, 951 P.2d 236, 239 (Utah Ct. App. 1997) (addressing the issue of whether it was plain error for a trial court to fail to give a limiting instruction under similar factual circumstances, and observing that a "majority of circuits have similarly refused to find plain error in a court's failure to issue a sua sponte cautionary instruction.").

In United States v. Davis, 838 F.2d 909 (7th Cir. 1988), the Court of Appeals observed

that a "district court should normally instruct the jury that the evidence [of the accomplice's guilty plea or conviction] may only be used for limited purposes and may not be used as substantive evidence of another's guilt," but that "failing to give a curative instruction does not ordinarily constitute plain error." <u>Davis</u>, 838 F.2d at 917. The Court also observed that a defendant not making an issue of the accomplice's testimony will "usually waive the issue for purposes of appeal" and that "[p]lain error will 'only be found in those rare instances in which other "aggravating circumstances" have exacerbated the prejudice.'" <u>Id.</u> (citations omitted).

We find the reasoning set forth by the cases in our review to be persuasive. Defense counsel may have ample reason to get beyond an accomplice's damaging testimony as quickly as possible. Whether the trial court should instruct the jury how the accomplice's testimony could, or could not, be considered is a matter best left to the discretion of defense counsel. Accordingly, for the reasons discussed, we hold that an accomplice who has entered a plea of guilty to the same crime charged against the defendant may testify as a witness on behalf of the State. However, if the jury learns of the accomplice's guilty plea, then upon the motion of the defendant, the trial court must instruct the jury that the accomplice's plea of guilty cannot be considered as proving the guilt of the defendant, and may only be considered for proper evidentiary purposes such as to impeach trial testimony or to reflect on a witness' credibility. The failure of the trial court, upon request, to give such a limiting jury instruction is reversible error. To the extent that Syllabus Point 3 of <u>State v. Caudill</u>, 170 W. Va. 74, 289 S.E.2d 748 (1982) is inconsistent, it is hereby modified.

When the defendant's accomplice Montgomery testified that he had pleaded guilty to the murder of Matthew Flack, the defendant did not preserve any error by objecting or requesting a limiting instruction. We also cannot say that

plain error doctrine has been triggered.  There
was no evidence that the prosecutor sought to
infer the defendant's guilt by virtue of
Montgomery's guilty plea, nor was there evidence
of any aggravating circumstances surrounding
Montgomery's testimony.  Accordingly, we do not
find that the "trial court has acted under some
misapprehension of the law or the evidence,"
State v. White, 228 W.V a. at 536, 722 S.E.2d at
573, in denying the defendant's motion for a new
trial on the ground that it failed to give a
limiting instruction regarding Montgomery's
testimony.

State v. Flack, 753 S.E.2d 761, 766-67 (W. Va. 2013).

In the state habeas proceedings, the Supreme Court of

Appeals rejected Flack's ineffective assistance of counsel claim

based on trial counsel's failure to request a Caudill limiting

instruction.  In so doing, the court stated:

Petitioner asserts that defense counsel
improperly failed to object to co-defendant Mr.
Montgomery telling the jury that he had pled
guilty to first-degree murder and was serving a
life sentence.  Petitioner contends that the
State was attempting to use Mr. Montgomery's
testimony as substantive evidence to prove
Petitioner's guilt.  Petitioner asserts that
defense counsel also failed to ask for a Caudill
instruction to be given to the jurors that the
evidence of the co-defendant's guilty plea and
sentence could only be considered on the issue of
his credibility and not on the issue of
Petitioner's guilt.

In Syllabus Point 3 of Caudill, this Court
held:
In a criminal trial an accomplice
may testify as a witness on behalf
of the State to having entered a
plea of guilty to the crime charged
against a defendant where such
testimony is not for the purpose of
proving the guilt of the defendant

25

and is relevant to the issue of the
witness-accomplice's credibility.
The failure by a trial judge to
give a jury instruction so limiting
such testimony is, however,
reversible error.

Syl. Pt. 3, Caudill, 170 W. Va. 74, 289 S.E.2d
748. We explained in Caudill that while
testimony elicited solely for the purpose of
proving guilt is impermissible, "where the
testimony regarding the plea is but a small part
of an accomplice's testimony" and the
accomplice's testimony is otherwise "general and
extensive in nature," the prejudice caused by
such testimony is limited. Id. at 81, 289 S.E.2d
at 755. However, we mandated the issuance of a
limiting instruction to ensure that a jury did
not "misinterpret the purpose for which testimony
[concerning a guilty plea] is offered." Id.

In Petitioner's direct appeal of his
conviction, we recognized that a limiting
instruction might only draw attention to an
otherwise innocuous mention and that it is better
for defense counsel to determine when testimony
concerning a plea is of the character that it
might be misconstrued by the jury (and thus
warrant a limiting instruction). Flack, 232 W.
Va. at 713, 753 S.E.2d at 766. We therefore
modified our prior holding in Caudill, concluding
that for tactical reasons, a defendant might not
want such a limiting instruction and therefore
that while the failure to issue the Caudill
instruction can be reversible error, it is not
unless such an instruction is requested by the
defense. Id.

Turning to the case at hand, it is evident
from the record that defense counsel admitted
error in failing to seek a Caudill instruction.
Defense counsel acknowledged in post-conviction
proceedings that they were unaware of this
Court's holding in Caudill. Thus, for purposes
of this proceeding, we find that the first prong
of Strickland has been satisfied and that defense
counsel's performance was deficient under an
objective standard of reasonableness. Miller,

194 W. Va. 3, 459 S.E.2d 114. However, the habeas court determined that the second prong of <u>Strickland</u> (proof that but for counsel's unprofessional errors, the result of the proceedings would have been different) was not satisfied. <u>Id.</u> We agree.

As we found in Petitioner's direct appeal, "[t]here was no evidence that the prosecutor sought to infer the defendant's guilt by virtue of Montgomery's guilty plea, nor was there evidence of any aggravating circumstances surrounding Montgomery's testimony." <u>Flack</u>, 232 W. Va. at 714, 753 S.E.2d at 767. The State contends, and we conclude, that it did not emphasize the fact that Mr. Montgomery had pled guilty in the presentation of its case. Mr. Montgomery provided wide-ranging testimony concerning his personal knowledge of the incident in question. While the State briefly mentioned Mr. Montgomery's incarceration at the beginning of his direct examination because he was wearing a prison jumpsuit, it is evident from the State's line of questioning that its intent was to assist the jury in making its credibility assessment. The State asked Mr. Montgomery the following question:

> Q. As a part of the plea agreement in the matter whereby you pled guilty to first-degree murder, did you agree to come forward and give truthful testimony, if necessary?
>
> A. Yes.

Following that question, defense counsel asked Mr. Montgomery numerous questions concerning the facts and circumstances of the crime, none of which contained any reference to his plea agreement. The only time the plea agreement was mentioned again was briefly in the prosecutor's closing argument when he noted that "Jasman Montgomery accepted his responsibility and his punishment, life, no guarantee of ever being paroled." Accordingly, it is clear from the record that the State did not elicit testimony about Mr. Montgomery's guilty plea with

the intent of relying on that testimony as
substantive evidence.  Therefore, because
Petitioner has failed to demonstrate that defense
counsel's decision not to request a limiting
instruction was so prejudicial as to change the
outcome of the trial, we affirm the habeas
court's ruling on this issue.

Flack v. Ballard, 803 S.E.2d 536, 549-50 (W. Va. 2017).

As the United States Court of Appeals for the Fourth
Circuit has explained, "[a]t this stage in the proceedings,
[plaintiff] must show `that the state court's ruling . . . was so
lacking in justification that there was an error well understood
and comprehended in existing law beyond any possibility for
fairminded disagreement.'" Hope v. Cartledge, 857 F.3d 518, 526
(4th Cir. 2017) (quoting Harrington v. Richter, 562 U.S. 86, 103
(2011)).  This Flack cannot do.  The state courts' decisions did
not unreasonably apply the Strickland standard or unreasonably
conclude that Flack failed to establish Strickland prejudice.
See id. (holding that state court's decision finding that
counsel's failure to request alibi defense instruction was not
prejudicial and was not unreasonable application of Strickland).
Flack's objection is **OVERRULED.**

C.    Cumulative error

Flacks lists a number of errors that he asserts support
his claim of cumulative error.  As the PF&R notes, Flack did not
raise a cumulative error claim in his state habeas proceedings.
Therefore this claim is unexhausted.  Hilton v. Stephon, Case No.

2:18-cv-00962-DCC-MGB, 2018 WL 6575502, *12 (D.S.C. Nov. 13, 2018).  In any event, plaintiff has not shown cumulative error that would entitle him to habeas relief.  As the <u>Hilton</u> court summarized:

> The Fourth Circuit Court of Appeals has held that cumulative error by trial counsel cannot provide a basis for habeas relief.  <u>See</u> <u>Fisher v. Angelone</u>, 163 F.3d 835, 852 (4th Cir. 1998) (rejecting petitioner's argument "that the cumulative effect of his trial counsel's individual actions deprived him of a fair trial"); <u>see also</u> <u>Mueller v. Angelone</u>, 181 F.3d 557, 586 (4th Cir. 1999) ("Petitioner also urges us to consider the cumulative effect of his ineffective assistance of counsel claims rather than whether each claim, considered alone, establishes a constitutional violation.  This argument is squarely foreclosed by our recent decision in <u>Fisher</u>. . . ."); <u>Howard v. United States</u>, No. CR 7:07-0294-HFF-7, 2011 WL 13172168, at *9 (D.S.C. Mar. 10, 2011) ("To the extent that Movant maintains that his motion should be granted based on trial counsel's alleged cumulative error, such relief is foreclosed by <u>Fisher</u>. . . .  'An error of constitutional magnitude occurs in the Sixth Amendment context only if the [movant] demonstrates (1) deficient performance and (2) prejudice.' . . . '[L]egitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient.' ").

<u>Id.</u> at *13.  Flack's objection to the PF&R's treatment of his cumulative error claim is **OVERRULED**.

## IV.  Conclusion

Based on the foregoing, the court adopts the Findings and Recommendations of Magistrate Judge Tinsley, **DENIES** plaintiff's

motion for summary judgment, **DENIES** plaintiff's motion for stay and abeyance, **GRANTS** defendant's motion for summary judgment, **DENIES** plaintiff's petition under 28 U.S.C. § 2254, and directs the Clerk to remove the matter from the court's docket.

Additionally, the court has considered whether to grant a certificate of appealability. See 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court DENIES a certificate of appealability.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record and to plaintiff pro se.

IT IS SO ORDERED this 30th day of September, 2019.

ENTER:

David A. Faber
Senior United States District Judge

30